Anthony **CANTU and Ronald Loredo, on behalf of themselves and a class of those similarly situated, Plaintiffs**

v.

**MILBERGER LANDSCAPING, INC., Defendant.**

**No. SA–13–CA–731.**

United States District Court, W.D. Texas.

Signed April 10, 2014.

**920**

Edmond S. Moreland, Jr., Moreland Law Firm, P.C., Wimberley, TX, Philip Jonathan Moss, San Antonio, TX, for Plaintiffs.

Gerald Thomas Drought, Mathis B. Bishop, Martin & Drought, P.C., San Antonio, TX, for Defendant.

## *ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT*

HARRY LEE HUDSPETH, Senior District Judge.

The Plaintiffs brought this collective action for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, against their employer, Milberger Landscaping, Inc. (Milberger). Both the Plaintiffs and the Defendant have filed motions for summary judgment (Docket Nos. 68 & 70). Having considered both motions and the pertinent responses and replies (Docket Nos. 75–78), the Court finds that the Plaintiffs' motion should be granted in part and denied in part and the Defendant's motion should be denied.

## I. Background

The summary judgment evidence establishes the following facts: The Plaintiffs worked as laborers for Milberger's off-site commercial landscaping business. Early in the mornings, the laborers met at Milberger's yard where they received instructions for the day's assignments and performed miscellaneous tasks such as running safety checks on the company trucks and trailers and loading ice, water, tools, and plants into their vehicles. Then, they would ride in those company trucks to various job sites. Sometimes, they worked at one job site for the entire day, but they often traveled from job site to job site during the course of a day. Milberger compensated them for this travel time between job sites. At the end of the day, they would return to the yard in the company's trucks. After arrival, they would perform additional tasks, such as disposing of trash, unloading tools and flowers, cleaning and fueling the vehicles and tools, and reloading the trucks.

The Plaintiffs brought this collective action[1] under the FLSA alleging that they were not paid overtime wages for four aspects of their daily work: (1) morning work at the yard before departure; (2)

---

1. The Court has recently denied the Defendant's motion to decertify the collective action (Docket No. 80).

morning travel time to the first job site; (3) afternoon travel time back to the yard; and (4) post-return work at the yard. The parties now appear to agree that the Plaintiffs were, in fact, paid for their morning travel time to the job site, but that Milberger did not pay its employees for their afternoon return travel time. Milberger asserts that *none* of the Plaintiffs' travel time, morning or afternoon, is compensable and that it was simply being generous in paying its employees for the morning travel time.

The Plaintiffs have moved for partial summary judgment on the grounds that (1) the afternoon travel time is compensable as a matter of law, (2) Milberger's violations of the FLSA were willful, extending the statute of limitations from two to three years, and (3) Milberger failed to keep accurate records of the employees' travel time, justifying the burden-shifting procedure set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Milberger has also moved for summary judgment, arguing that (1) the afternoon travel time is **not** compensable as a matter of law, and (2) the Plaintiffs have failed to provide "definite and certain evidence" that they performed uncompensated work in the mornings and afternoons.

Because it is undisputed that the Plaintiffs were not paid for their afternoon travel time and that they performed work upon returning to the yard, the Court will grant the Plaintiffs' motion for summary judgment in part and determine, as a matter of law, that this travel time is compensable under the FLSA. However, material fact questions remain as to whether the violation was "willful" and whether Milberger's timekeeping records are accurate. Therefore, Plaintiffs' motion for summary judgment will be denied in all other respects. The Court will also deny the Defendant's motion for summary judgment, because there is a material fact question as to whether employees performed uncompensated work before traveling to a job site and after returning to the yard.

## II. Applicable Law and Analysis

### A. Afternoon Travel Time

In 1938, Congress enacted the FLSA "as a means of regulating minimum wages, maximum working hours, and child labor in industries that affected interstate commerce." *Griffin v. S & B Engineers & Constructors, Ltd.*, 507 Fed.Appx. 377, 380 (5th Cir.2013) (unpublished) (quoting *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1024 (5th Cir.1993)). The law requires that covered employees who work more than forty hours in a week must be paid at one-half times their regular hourly rate. 29 U.S.C. § 207(a)(1). In 1947, in order to ensure that employers would not have to pay for ordinary time spent commuting, Congress amended the FLSA by enacting the Portal–to–Portal Act. **See** *IBP, Inc. v. Alvarez*, 546 U.S. 21, 26, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) (The amendment was enacted "[b]ased on findings that judicial interpretations of the FLSA had superseded 'long-established customs, practices, and contracts between employers and employees[.]' ") (quoting 61 Stat. 84). The Act exempts from the FLSA:

(1) Walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

(2) activities which are **preliminary to or postliminary to said principal activity or activities** ...

29 U.S.C. § 254(a) (emphasis added).

■ In interpreting this provision, the Department of Labor has adopted the

"continuous workday" or "whistle to whistle" rule, which means that the "workday" is defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b). The "principal activity or activities" are those which are "integral and indispensable" to the employee's work. *Griffin,* 507 Fed. Appx. at 380–81; *IBP,* 546 U.S. at 29–30, 126 S.Ct. 514.

■ Under this rule, an employee's travel time is not compensable unless it is "an indispensable part of performing one's job[.]" *Vega v. Gasper,* 36 F.3d 417, 424 (5th Cir.1994). However, "[w]here an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and carry tools, the travel from the designated place to the workplace is part of the day's work, and must be counted." *Id.* at 425 (quoting 29 C.F.R. § 785.38 (1990)) (emphasis in original).[2] In *Vega,* the Court of Appeals held that the time farm workers spent traveling to and from chile pepper fields was not compensable, even though the trips routinely took over two hours. 36 F.3d at 423–25. The Court based its decision on several factors: "1) the workers performed no work prior to or during the bus rides; 2) the workers did not load tools or otherwise engage in preparatory work during the bus rides or prior to harvesting the chile peppers; 3) the workers' mere receipt of Gasper's instructions regarding field work and pay rate was insufficient to render such time compensable; 4) the workers' use of Gasper's buses was voluntary; 5) the length of travel time, in itself, did not render the travel time compensable; and 6) the workers did not have to travel between job sites after harvesting the chile peppers." *Griffin,* 507 Fed.Appx. at 381–82 (discussing *Vega,* 36 F.3d at 425).

■ The facts in the instant case distinguish it from *Vega* in that that the Plaintiffs here worked upon returning to the yard. As Milberger admits, "it is undisputed that any work performed at Milberger's after the Plaintiffs returned from the last job of the day was of the nature of loading and unloading, dumping refuse collected during the [visits to job sites], and preparing for the following day's maintenance work." **Defendant's Response to Plaintiffs' Motion for Summary Judgment,** Docket No. 76, at 5.[3] Further, the Department of Labor regulation quoted in *Vega* makes it clear that, if an employee "pick[s] up or carr[ies] tools" before or after traveling to a job site, that travel time is compensable working time. 29 C.F.R. § 785.38 (2011); **see also** *Vega,* 36 F.3d at 425 ("They did not load tools or engage in activities that prepared them or their equipment for picking chile peppers before or while riding the buses."); *Griffin,* 507 Fed.Appx. at 383 ("[H]e neither performed any work prior to the beginning of his shift at the Motiva Plant nor received any work-related instructions prior to or during the bus rides."). The tasks

2. This quote is unchanged in the more recent iteration of this regulation. 29 C.F.R. § 785.38 (2011).

3. In a separate discussion in Milberger's response to the motion for summary judgment, Milberger notes that two of the opt-in Plaintiffs, Dean Stovall and Frank Rivas, spent much of their time working at the JW Marriott, where they received permission to report directly to the job site in their own vehicles and then drive home, rather than back to the yard in company trucks. **See** Defendant's Response to Plaintiffs' Motion for Summary Judgment, Docket No. 76, at 8–9. This fact, however, pertains to the *number* of hours that each Plaintiff spent traveling in company trucks, not the *compensability* of the time that the Plaintiffs spent traveling in company trucks back to the yard.

performed in this case were substantial, and they were "integral and indispensable" to the Plaintiffs' work as landscape laborers. *Griffin,* 507 Fed.Appx. at 381. Therefore, these tasks, as well as the drive back to the yard, are compensable "principal activities" under the Portal–to–Portal Act. The Plaintiffs' motion for summary judgment on this issue will be granted, and the Defendant's motion for summary judgment on this issue will be denied.

## B. Willfulness

 The FLSA imposes a two-year statute of limitations, but this period is extended to three years when an employer *willfully* violates the Act. 29 U.S.C. § 255(a). To establish a willful violation, a plaintiff "bears the burden of establishing that his former employers 'either knew or showed reckless disregard for the matter whether [their] conduct was prohibited by the statute.'" *Mohammadi v. Nwabuisi,* 2013 WL 1966746, at *13 (W.D.Tex.2013) (quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)). The Plaintiffs argue that Milberger acted in "reckless disregard" of its non-compliance with the FLSA simply because it failed to consult an attorney. *Cf. Mohammadi,* 2013 WL 1966746, at *13 ("Resource is a large, sophisticated company with over 500 employees.... Defendants were on notice that their actions [ ] potentially violated the FLSA, and yet they failed to take steps-such as securing legal advice from a competent professional[.]"). But this inaction, standing alone, is insufficient to demonstrate that Milberger acted willfully in violating the FLSA. Therefore, the Plaintiffs' motion for summary judgment on this issue will be denied.

## C. Evidence of Hours Worked

 Finally, the Court turns to the issue, presented in both parties' summary judgment motions, of *how many* hours of compensable work went unpaid. Generally, a plaintiff "bears the burden of proving, with definite and certain evidence, that he performed work for which he was not properly compensated." *Reeves v. Int'l Telephone & Telegraph Corp.,* 616 F.2d 1342, 1352 (5th Cir.1980), **abrogated on other grounds by** *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). However, when an employer fails to maintain complete and accurate timekeeping records, "[t]he solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Von Friewalde v. Boeing Aerospace Ops., Inc.,* 339 Fed.Appx. 448, 455 (5th Cir.2009) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). Instead, the employee has sustained his burden if he proves that he has in fact performed uncompensated work "and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson,* 328 U.S. at 687, 66 S.Ct. 1187. Then, the burden shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference from the employee's evidence. *Anderson,* 328 U.S. at 687–88, 66 S.Ct. 1187. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688, 66 S.Ct. 1187.

Here, both parties have moved for summary judgment. The Plaintiffs argue that Milberger's records of time spent in returning from job sites are insufficient as a matter of law, and that they are entitled to the burden-shifting presumption set forth in *Anderson.* In its motion, Milberger

argues that the Plaintiffs have failed to meet their burden of showing, with "definite and certain evidence," that they worked without pay in the mornings and afternoons. Material fact questions preclude summary judgment on both issues.

### 1. Afternoon Travel Time

 Milberger operated under the assumption that its employees' afternoon travel time was not compensable under the FLSA. Therefore, its employees' time sheets failed to reflect this time. However, Milberger asserts that the afternoon time can still be determined in two ways: (1) by calculating the distance between the last job site and the yard; and (2) by looking at the time sheets kept by foremen, who recorded their travel time because they were actually paid for driving the trucks. Although these "records" leave much to be desired, a reasonable jury could determine that they were accurate enough to be relied upon. Therefore, the Plaintiffs' motion for summary judgment on this issue should be denied.

### 2. Morning and Afternoon Work

 Milberger argues that the Plaintiffs have failed to produce "definite and certain evidence" that they worked without pay in the mornings and afternoons in the yard. *Reeves*, 616 F.2d at 1352. According to Milberger, it consistently and accurately recorded this work in time sheets and labeled it "code 1313" time. However, the Plaintiffs assert that this "1313" time is underreported because Milberger had a policy of clocking employees out when they stopped performing tasks and began waiting for the trucks to depart.[4] Further, the Plaintiffs assert that the combined "1313" time that represented work done in the

mornings and the afternoons was usually recorded as being only .25 hours, or 15 minutes, when the Plaintiffs actually performed roughly 15 minutes of work in the morning and 20 minutes of work in the afternoons. Taken together, this evidence creates material fact questions as to whether the Plaintiffs were fully compensated for their work in the mornings and afternoons, and summary judgment is inappropriate on this issue.

### III. Conclusion

In sum, the Court holds that the Plaintiffs' afternoon travel time back to the yard is compensable as a matter of law. However, fact questions exist as to whether (1) the Defendant willfully violated the FLSA, (2) the Defendant maintained accurate records of the Plaintiffs' travel time, and (3) the Plaintiffs have proved uncompensated work with "definite and certain evidence."

It is therefore ORDERED that the Plaintiffs' motion for summary judgment (Docket No. 68) be, and it is hereby, GRANTED IN PART with respect to the compensability of the Plaintiffs' afternoon travel time.

It is further ORDERED that the Plaintiffs' motion for summary judgment (Docket No. 68) be, and it is hereby, DENIED in all other respects.

It is further ORDERED that the Defendant's motion for summary judgment (Docket No. 70) be, and it is hereby, DENIED.

---

4. Milberger's commercial maintenance manager, Randy Clayton, admitted during a deposition that, if the workers had finished loading the trucks and performing work, they were not paid for the time they spent waiting for the trucks to depart (Docket No. 75–1, p. 145).